IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

JAE M. ROBINSON,

                              Petitioner,                        OPINION AND ORDER

    v.

                                                            20-cv-482-wmc

RANDALL HEPP, WARDEN, WAUPUN
CORRECTION INSTITUTION,

                              Respondent.

Petitioner Jae M. Robinson filed a *pro se* petition for a writ of habeas corpus under 28 U.S.C. § 2254 to challenge his 2017 convictions for first-degree intentional homicide and substantial battery as a party to a crime. Respondent has moved to dismiss Robinson's petition, contending that his claims are procedurally defaulted and noncognizable on federal habeas review. (Dkt. #17.) For the following reasons, the court agrees.

BACKGROUND[1]

The criminal charges against Robinson arose from a fight outside the bar "Bumps" in Baraboo, Wisconsin, at closing-time. *Id.* at ¶ 2.

Before the fight, the victims, Inman and A.P., were outside Bumps while Robinson and his friends were a block away. *Id.* at ¶ 3. As Inman and A.P. headed towards Robinson, a fight broke out. *Id.* Inman had a knife, but Robinson disarmed and then stabbed him 26 times, including stabbing Inman's lungs, heart, and liver. *Id.* at ¶¶ 3, 10. Inman died at the scene while Robinson suffered only minor cuts to his fingers. *Id.* at ¶¶ 3, 10. At

---

[1] The court takes the following facts from the petition, publicly available state court records, and the state court of appeals' decision affirming Robinson's convictions. *State v. Robinson*, 2020 WI App 1 (per curiam). The court will address additional facts in the body of this opinion as they become relevant to its analysis.

trial, Robinson testified that Inman ran at him with the knife, and he used it against Inman in self-defense. *Id.* at ¶ 4. The evidence also included testimony of Robinson laughing as he acknowledged "stab[ing] the shit out of" Inman, and of his later referring to Inman and A.P., who also sustained serious injuries, as "trailer trash." *Id.* at ¶ 10.

The jury convicted Robinson of both first-degree homicide and party-to-the-crime of substantial battery. The circuit court judge sentenced him to life imprisonment on the homicide count with eligibility for extended supervision after 30 years and to 1 year and 6 months' imprisonment on the battery count to be served concurrent with any other sentence, along with 1 year of extended supervision.

Robinson filed a postconviction motion for a new trial in the circuit court, which was denied. *Id.* at ¶ 1. On appeal to the Wisconsin Court of Appeals, he raised two arguments, in addition to his request for a new trial in the interest of justice. First, he argued that the circuit court admitted improper, other acts evidence that had no connection to the fight. *Id.* at ¶ 9. This consisted of statements that in the hours leading up to the stabbing incident, Robinson: (1) verbally harassed a man at a gas station; (2) punched a man in the jaw; and (3) was "on a rampage." *Id.* at ¶ 7. Second, Robinson argued that his trial counsel was ineffective by failing to: (1) object to other acts evidence that Robinson had harassed two women at Bumps on the night of the fight; (2) develop the theory that A.P. was motivated to fight Robinson out of jealousy over one of those women; and (3) object to the prosecutor's assertion during closing arguments that just before the fight, Robinson and a friend parked their vehicle where they could see who was leaving the bar. *Id.* at ¶¶ 13, 16, 18.

The Wisconsin Court of Appeals rejected both arguments and affirmed Robinson's

convictions. As for the other acts evidence, the court held that it was properly admitted to prove Robinson's motive and intent, since the evidence was "confined to events on the night" of the fight and supported the state's theory that Robinson "was looking to get into fights that night and started the fight with Inman and A.P." *Id.* at ¶ 8. The court also rejected Robinson's argument that trial counsel was ineffective because: (1) an objection to additional other acts evidence would have been meritless; (2) counsel made a reasonable decision not to pursue the theory that A.P. was motivated by jealousy in instigating a fight with Robinson; and (3) counsel's failure to object to the prosecutor's assertion was not prejudicial. *Id.* at ¶¶ 13, 16, 19.

Robinson sought discretionary review of the decision in the Wisconsin Supreme Court, renewing his argument that the circuit court erroneously admitted other acts evidence and that he was entitled to a new trial in the interests of justice, but not his ineffective assistance argument. (Dkt. #18-4 at 2.) As for other acts evidence, Robinson again invoked Wis. Stat. § 904.04, as he had in the court of appeals, which governs the use of that evidence, arguing that the circuit court misapplied the Wisconsin Supreme Court's admissibility test as laid out in *State v. Sullivan*, 216 Wis. 2d 768, 576 N.W.2d 30 (1998). (*Id.* at 6-11; *see also Robinson*, 2020 WI App 1, ¶¶ 5-10.)

After the Wisconsin Supreme Court denied his petition for review, Robinson timely filed this § 2254 petition for a writ of habeas corpus. (*See* dkt. ##1; 1 at 12.) The court construes his petition as attempting to raise two claims: (1) trial counsel was ineffective for failing to develop a theory that Inman and A.P. had a motive to attack him; and (2)

3

the circuit court admitted improper other acts evidence.[2]  (Dkt. #9 at 2.)  The court addresses them in turn below.

OPINION

I. **Ineffective assistance of counsel claim**

To begin, respondent contends that petitioner's ineffective assistance claim is procedurally defaulted, and the court agrees.  Federal court review of a habeas petition is deferential and limited; it is not "a substitute for ordinary error correction through appeal." *Harrington v. Richter*, 562 U.S. 86, 102-03 (2011).  Before a federal court may review the petition's merits, a petitioner must (1) exhaust all remedies available in state courts and (2) fairly present any federal claims in state court first.  Otherwise, he risks procedural default.  *See Chambers v. McCaughtry*, 264 F.3d 732, 737 (7th Cir. 2001) ("Failure to exhaust available state court remedies constitutes a procedural default.").  A procedural default will bar federal habeas relief unless petition can demonstrate *both* cause for and prejudice from that default, *or* establish that denial of relief will result in a miscarriage of justice.  *Lewis v. Sternes*, 390 F.3d 1019, 1026 (7th Cir. 2004).

Here, petitioner failed to raise ineffective assistance of counsel as a basis for his petition for review by the Wisconsin Supreme Court.  (Dkt. #18-4 at 2.)  Moreover, because state law requires that a petition for review be filed within 30 days of the court of appeals' decision, petitioner cannot return to the state supreme court to exhaust this claim.  Wis. Stat. § 808.10(1).  As an adequate and independent state procedural bar, petitioner's

---

[2] To the extent Robinson argues other grounds for relief in his response brief not recognized in the court's Rule 4 order (dkt. #9), they are not properly before the court and the court will not address them.

4

ineffective assistance claim is procedurally defaulted. *See Wilson v. Cromwell*, 58 F.4th 309, 319 (7th Cir. 2023) (petitioner's ineffective assistance claim is procedurally defaulted because the Wisconsin Supreme Court never evaluated it); *Buelow v. Dickey*, 847 F.2d 420, 425 (7th Cir. 1988) (discussing requirements of Wis. Stat. § 808.10 and instructing federal courts to "respect a state court's finding of waiver or procedural default under its own laws").

To overcome this default, petitioner now contends that his appellate attorney was also ineffective by omitting ineffective assistance claims out of concern that those claims would "water the other arguments down" and presented "no issues of law that would qualify for review." (Dkt. ##24 at 7-8; 33-1.) *First*, while ineffective assistance of counsel may "constitute cause to set aside a procedural bar," *Promotor v. Pollard*, 628 F.3d 878, 887 (7th Cir. 2010), "[t]here is no federal constitutional right to the effective assistance of counsel in a discretionary appeal such as [Robinson's] petition for review to the Wisconsin Supreme Court; the constitutional right to counsel is guaranteed to a defendant only for trial and for the first appeal as of right." *Young v. Dittmann*, No. 14-CV-434, 2014 WL 6819348, at *2 (E.D. Wis. Dec. 2, 2014). Thus, even if not justified, appellate counsel's alleged ineffective assistance before the Wisconsin Supreme Court cannot excuse petitioner's procedural default. *Second*, even if it could, petitioner did not raise the ineffective assistance of his appellate attorney in state court, and such a claim "must be raised in state court before it can suffice on federal habeas relief as cause to excuse the default of another claim." *Whyte v. Winkleski*, 34 F.4th 617, 624 (7th Cir. 2022).

**II. Other acts claim**

This leaves petitioner's other acts claim. Respondent maintains that petitioner also procedurally defaulted this claim by failing to frame it as a due process claim in state courts.[3] In reply, petitioner argues that: the other acts evidence admitted at his trial does not satisfy the Wisconsin Supreme Court's *Sullivan* admissibility test; and these evidentiary rulings were so prejudicial that they violated his due process right to a fair trial. (Dkt. #24 at 9-20.)

As noted above, for a petitioner to exhaust his remedies in state court, he must give the state courts a chance to act on his federal claims before bringing them to a federal court in a habeas petition. Moreover, because "a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States," federal habeas corpus relief does not lie for errors of state law. *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991).

In deciding whether a petitioner's federal constitutional claim was fairly presented to state courts, four factors bear upon the analysis: (1) whether the petitioner relied on federal cases that engaged in constitutional analysis; (2) whether the petitioner relied on state cases that applied a constitutional analysis to similar facts; (3) whether the petitioner framed his claim in terms so particular that it calls to mind a specific constitutional right; and (4) whether the petitioner alleged a pattern of facts that is well within the mainstream of constitutional litigation. *Whatley v. Zatecky*, 833 F.3d 762, 771 (7th Cir. 2016).

---

[3] Respondent argues in the alternative that this claim is noncognizable on habeas review because it turns on evidentiary rulings under state law. Because the court will resolve this claim on procedural default grounds, it does not address this alternative argument.

Importantly, the court's application of this test is not hypertechnical. Instead, "[a]ll four factors need not be present to avoid default, and conversely, a single factor alone does not automatically avoid default." *Id.*

In state court, this petitioner did not present a federal-law theory. Instead, he argued that the admission of other acts evidence violated Wis. Stat. § 904.04(2) and its related *Sullivan* test articulated by the Wisconsin Supreme Court, although he argues otherwise here: "it clearly states his constitutional rights were violated" on pages 12, 13, and 18 of his appellant's brief to the Wisconsin Court of Appeals. (Dkt. #24 at 9.) However, petitioner merely argues in that brief that he was deprived of "a fair trial" with respect to his claims. (Dkt. #18-2 at 16, 22, 29.) Moreover, he does not make the same assertion in his petition for review.

Regardless, petitioner only argued that trial counsel was ineffective in violation of his Sixth Amendment rights, and when it came to his other acts claim in particular, his state-court briefing and the court of appeals' decision *explicitly* addressed the Wisconsin evidentiary issue under § 904.04(2), *not* any constitutional due process theory associated with this claim. *See Richardson v. Lemke*, 745 F.3d 258, 275 (7th Cir. 2014) ("State court evidentiary rulings only implicate the Due Process Clause when evidence is so extremely unfair that its admission violates fundamental conceptions of justice," creating the likelihood that an innocent person was convicted.). In short, petitioner never referenced due process or the Fourteenth Amendment, or relied on any federal or state cases that apply a due process analysis to similar facts. *See Perruquet v. Briley*, 390 F.3d 505, 520 (7th Cir. 2004) (petitioner's state-court briefing did not mention due process or the Fourteenth Amendment, and petitioner cited only state cases that did not look to the federal

7

constitution or employ a due process analysis); *Sauve v. Hepp*, No. 18-CV-932-JPS, 2019 WL 6327199, at *4-5 (E.D. Wis. Nov. 26, 2019) (state court had notice of petitioner's due process claim due in part to petitioner's reliance on a state court case that evaluated whether the inclusion of other acts evidence denied petitioner due process).

### III. Fundamental miscarriage of justice

Finally, petitioner has not even attempted to identify any circumstance that might amount to an explanation or cause for his procedural default. *See Lewis v. Sternes*, 390 F.3d 1019, 1026 (7th Cir. 2004) ("Cause for a default is ordinarily established by showing that some type of external impediment prevented the petitioner from presenting his federal claim to the state courts."). Instead, petitioner argues that it would be a "miscarriage of justice" if the court did not review his claims on the merits.[4] The fundamental miscarriage of justice "exception applies only in the rare case where the petitioner can prove that he is actually innocent of the crime of which he has been convicted." *Wilson*, 58 F.4th at 319. Such proof must take the form of "new reliable evidence—whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence—that was not presented at trial." *Schlup v. Delo*, 513 U.S. 298, 324 (1995). Petitioner must further prove "that it is more likely than not that no reasonable juror would have convicted him in the light of the new evidence." *Id.* at 327. Needless to say, this standard erects an *extremely* high bar for the habeas petitioner to clear. *Id.*

---

[4] Petitioner suggests that he can overcome his default by showing that his claims have merit, and he relies on *Miller El v. Cockrell*, 537 U.S. 322 (2003) for this proposition. Unfortunately for petitioner, *Miller El* actually states the grounds for issuing a certificate of appealability, not for establishing a miscarriage of justice.

Petitioner has not met this heavy burden. Indeed, he *admits* killing Inman but claims it was in self-defense, which is an affirmative defense in Wisconsin law allowing a jury to find "that [the defendant] reasonably used lethal force against [another person] in defense of his own life" and excuses the defendant's conduct as a legal matter. *Brown v. Eplett*, 48 F.4th 543, 553 (7th Cir. 2022). Even though petitioner contends that Inman did not "disengage" from the fight after petitioner disarmed him, this self-defense claim is sharply undermined by the fact that he proceeded to stab Inman 26 times, including blows to his lungs, heart, and liver, while petitioner sustained only superficial injuries, then laughed about having "stabbed the shit out of" Inman. (Dkt. ##18-1 at 5; 24 at 34.) On this evidence alone, the court is convinced that a reasonable juror could and would convict him, and petitioner has not presented any "new reliable evidence" that would cause it to conclude otherwise.[5] As such, Robinson has not established a fundamental miscarriage of justice.

## IV. Certificate of appealability

The only remaining question on habeas review is whether to grant petitioner a certificate of appealability. Under Rule 11 of the Rules Governing Section 2254 Cases, the court must issue or deny a certificate of appealability when entering a final order adverse to a petitioner. To obtain a certificate of appealability, the applicant must make a

---

[5] In his opposition brief, petitioner asserts that his attorney sent out questionnaires to the jurors after trial and that two responded stating that petitioner was "not guilty of first[-]degree intentional homicide." (Dkt. #24 at 34.) Petitioner did not submit these questionnaires or an affidavit from either juror. Regardless, such evidence would not establish that "it is more likely that not that *no* reasonable juror would have convicted him in light of" new evidence. *Schulp*, 513 U.S. at 327 (emphasis added).

"substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2); *Tennard v. Dretke*, 542 U.S. 274, 282 (2004). This means that "reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further." *Miller El v. Cockrell*, 537 U.S. 322, 336 (2003) (internal quotations and citations omitted). Because this court finds that no reasonable jurist would debate whether petitioner procedurally defaulted his claims, the court will not issue petitioner a certificate of appealability. Petitioner may seek a certificate from the court of appeals under Federal Rule of Appellate Procedure 22.

## ORDER

IT IS ORDERED that:

1) Respondent Randall Hepp's motion to dismiss (#17) is GRANTED and petitioner Jae M. Robinson's petition for a writ of habeas corpus under 28 U.S.C. § 2254 is DISMISSED.

2) Petitioner is DENIED a certificate of appealability. He may seek a certificate from the court of appeals under Federal Rule of Appellate Procedure 22.

Entered this 26th day of February, 2024.

BY THE COURT:

/s/

_____
WILLIAM M. CONLEY
District Judge